## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION
1333 H St. NW
Washington, DC  20005,

     *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
    SECURITY
245 Murray Ln. SW
Washington, DC  20528,

     *Defendant*.

Case No. 18-cv-375

## **COMPLAINT**

1.     Plaintiff Democracy Forward Foundation brings this action against Defendant the

U.S. Department of Homeland Security ("DHS") to compel compliance with the Freedom of

Information Act, 5 U.S.C. § 552 (the "FOIA").  Defendant has failed to sufficiently respond to

Plaintiff's request for communications and records that relate to DHS's relationship with private

detention corporations, including as reflected by contracts with private detention corporations for

the planning, construction, operation, and maintenance of private detention facilities.

2.     The records Plaintiff has requested are of significant public importance.  The

Administration of President Donald J. Trump has expressed its intention to aggressively detain

and deport individuals who are present in the United States without lawful status.  Concurrent

with its plans for aggressive immigration enforcement, the Trump Administration has sought to

expand its use of, and reliance upon, private detention facilities to hold those immigrants who

have been detained.

3.      DHS's reliance on private detention facilities raises at least two issues that are of significant public concern.  First, these facilities have long faced criticism for their failure to adequately provide for the health and safety of detainees.  Indeed, a majority of the members on Defendant's own advisory council previously recommended against continued use of private detention facilities.  Second, the private detention industry has provided substantial support for President Trump's political and personal endeavors.  The industry helped finance President Trump's campaign and inaugural festivities, and it continues to patronize his business enterprises, which raises concerns about whether Defendant's decision to increase its reliance on private detention corporations has been influenced by the private prison corporations that are the President's benefactors.

4.      Plaintiff submitted a FOIA request to DHS in order to examine, and educate the public about, significant questions concerning DHS's contracts with private detention corporations.  DHS has failed to sufficiently respond to Plaintiff's request.  Plaintiff therefore respectfully requests that the Court compel Defendant to comply with the FOIA.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## PARTIES

7.      Plaintiff Democracy Forward Foundation is a not-for-profit organization incorporated under the laws of the District of Columbia, and based in Washington, D.C.  Plaintiff

works to promote transparency and accountability in government, in part, by educating the

public on government actions and policies.

8.      Defendant DHS is a federal agency within the meaning of FOIA, *see* 5 U.S.C.

§ 552(f)(1), that is headquartered in Washington, D.C.  Defendant has possession, custody, and

control of records to which Plaintiff seeks access.

## FACTUAL ALLEGATIONS

9.      In August 2016, then-Secretary of DHS Jeh Johnson asked the Homeland Security

Advisory Council ("HSAC") to study DHS's use of private detention facilities, and to make a

recommendation about whether DHS should continue using private detention centers.[1]  The

December 2016 report containing HSAC's recommendation, which was prepared by a six

member sub-committee of the 30-member Council, concluded that logistical concerns suggested

"that DHS's use of private for-profit detention will continue," but that such "continuation should

come with improved and expanded [U.S. Immigration & Customs Enforcement ("ICE")]

oversight[.]"  HSAC Subcommittee Report at 2.  However, that recommendation was opposed by

a clear majority of the Council's members, which "dissent[ed] from the conclusion that reliance

on private prisons should, or inevitably must, continue."  *Id.* at 11 n.14; *see also id.* at 2 n.3

("Footnote 14 was endorsed by a majority of the HSAC voting to accept the subcommittee

report.").

---

[1] Homeland Sec. Advisory Council, *Report of the Subcommittee on Privatized Immigration Detention Facilities* at 1 (Dec. 1, 2016) ("HSAC Subcommittee Report"), https://www.dhs.gov/ sites/default/files/publications/DHS%20HSAC%20PIDF%20Final%20Report.pdf.

10.     President Trump issued an Executive Order on January 25, 2017, calling for DHS to "immediately construct, operate, control, or establish contracts to construct, operate, or control facilities to detain aliens at or near the land border with Mexico."[2]

11.     To date, DHS has given no indication of how, or if, it plans to address the detainee health and safety issues, including deaths and sexual abuse, that have proven to be endemic to private detention facilities.[3]  Quite the opposite, DHS has reportedly sought to remove certain baseline detainee health and safety standards from detention cooperation agreements with local jails that hold detainees on behalf of ICE.[4]  DHS has not made clear whether it has sought, or will seek, to use the procurement process for private detention facilities to similarly alter or amend detention health and safety standards.

12.     Despite the lack of clarity on these issues, DHS is moving forward with plans to aggressively expand the use of private detention facilities,[5] and has already begun awarding contracts for the construction and operation of private detention facilities.[6]

---

[2] Exec. Order No. 13,767, 82 Fed. Reg. 8,793 (Jan. 25, 2017).

[3] *See, e.g.*, Madison Pauly, *In 3 Months, 3 Immigrants Have Died at a Private Detention Center in California*, MotherJones (Jun. 2, 2017), https://www.motherjones.com/politics/2017/06/adelanto-death-immigration-detention-geo/ (reporting on health and safety issues with GEO Group owned detention facilities); Safia Samee Ali, *Sexual Assaults in Immigration Detention Centers Rarely Get Investigated, Group Charges*, NBC News (Apr. 12, 2017), https://www.nbcnews.com/news/us-news/sexual-assaults-immigration-detention-centers-don-t-get-investigated-says-n745616 (reporting that "[o]f the 76 detention centers where sexual assault was documented, the top five with the most complaints are run by private detention centers").

[4] *See* Caitlin Dickerson, *Trump Plan Would Curtail Protections for Detained Immigrants*, N.Y. Times (Apr. 13, 2017), https://www.nytimes.com/2017/04/13/us/detained-immigrants-may-face-harsher-conditions-under-trump.html.

[5] *See, e.g.*, Alan Gomez, *Trump Plans Massive Increase in Federal Immigration Jails*, USA Today (Oct. 17, 2017), https://www.usatoday.com/story/news/world/2017/10/17/trump-plans-massive-increase-federal-immigration-jails/771414001/ (reporting on ICE's effort "to identify privately-run jail sites in Chicago, Detroit, St. Paul, Salt Lake City and southern Texas"); John Burnett, *Big Money As Private Immigrant Jails Boom*, NPR (Nov. 21, 2017), https://www.npr.org/2017/11/21/565318778/big-money-as-private-immigrant-jails-boom ("In recent months,

President Trump's Support From and For Private Detention Corporations

13.    Private detention corporations have financially supported President Trump's political and private interests in a number of ways.

14.    A subsidiary of the GEO Group, one of the largest private prison corporations, contributed more than $200,000 to a political action committee that supported President Trump's candidacy.[7]

15.    The GEO Group donated another $250,000 to help finance President Trump's inaugural festivities.[8]

16.    In April 2017, the GEO Group, a publicly-held private detention corporation, was awarded a $110-million contract to build and operate an immigration detention facility in Conroe, Texas.[9]

---

[ICE] has called for five new detention facilities to be built and operated by private prison corporations across the country.").

[6] *See* Press Release, GEO Grp., Inc., The GEO Group Awarded Contract for the Development and Operation of a New Company-Owned 1,000-Bed Detention Facility in Texas (Apr. 13, 2017), http://investors.geogroup.com/file/Index?KeyFile=2000088787; Meredith Hoffman, *Texas Getting First Immigrant Center Built Under Trump*, Associated Press (Apr. 14, 2017), https://apnews.com/b70c0d6c21384140bdd8158215cb2130/texas-getting-first-immigrant-lockup-built-under-trump.

[7] *See* Amy Brittain & Drew Harwell, *Private-prison Giant, Resurgent in Trump Era, Gathers at President's Resort*, Wash. Post (Oct. 25, 2017), https://www.washingtonpost.com/politics/with-business-booming-under-trump-private-prison-giant-gathers-at-presidents-resort/2017/10/25/b281d32c-adee-11e7-a908-a3470754bbb9_story.html; *see also* Letter from Campaign Legal Center to Fed. Election Comm'n (Dec. 20, 2016), http://www.campaignlegalcenter.org/document/letter-trump-super-pac-received-illegal-donations-private-prison-company (describing a $250,000 contribution made by GEO Corrections Holdings, Inc. to Rebuilding America Now, a Super PAC that supported President Trump's candidacy).

[8] *See* Brittain & Harwell, *supra* note 7.

[9] *See* Press Release, *supra* note 6; *see also* Hoffman, *supra* note 6.

17.     More recently, the GEO Group moved its annual conference to the Trump National Doral Golf Club.[10]  The GEO Group's decision has been described as "an apparent ongoing effort to align more closely with President Trump."[11]

18.     Private detention corporations stand to benefit tremendously from an increased reliance on private detention centers by the Trump Administration, which also favors tougher immigration enforcement that will increase the need for bed space in detention centers.[12]

<u>The Need for the Requested Records</u>

19.     DHS's decision to aggressively pursue individuals living in the United States without lawful immigration status, and to rely on private detention facilities to house those whom it detains, has sparked significant public interest.[13]  But DHS has failed to publicly state how, or even whether, it will address the issues of detainee health and safety that have long plagued private detention facilities.

20.     Moreover, in light of the financial support provided by private detention corporations to President Trump, as well as the GEO Group's recent decision to patronize one of President Trump's resort properties, there is additional interest in better understanding Defendant's future plans for its relationship with private detention corporations, including what oversight requirements, if any, will be implemented through contract.

---

[10] *See* Brittain & Harwell, *supra* note 7; *see also* Avery Anapol, *Private Prison Company Moves Annual Conference to Trump Golf Course*, The Hill (Oct. 26, 2017), http://thehill.com/homenews/administration/357282-private-prison-company-moves-annual-conference-to-trump-golf-course.

[11] Anapol, *supra* note 10.

[12] Eli Watkins & Sophie Tatum, *Private Prison Industry Sees Boon Under Trump Administration*, CNN (Aug. 18, 2017), http://www.cnn.com/2017/08/18/politics/private-prison-department-of-justice/index.html.

[13] *See, e.g.*, Gomez, *supra* note 5; Burnett, *supra* note 5.

21.     The timely need for this information is particularly apparent in light of the ongoing immigration debate.  No national discussion of immigration reform can be complete without an understanding of DHS's expectations for detention facility need, and the role that private detention corporations will play moving forward.

Plaintiff's FOIA Request

22.     To understand and explain to the public the nature of DHS's relationship with private detention corporations, including as reflected through contracts with private detention corporations for the planning, construction, operation, and maintenance of private detention facilities, and the ways in which the existing relationship between private detention corporations and the Trump Administration might affect federal immigration policy, Plaintiff submitted the following requests for records to DHS on May 18, 2017:

(1) All records that refer or relate to: procurement of services for the planning, construction, operation, or maintenance of private detention or immigration-detention centers and/or facilities, or by private detention center and/or facility companies.

(2) Copies of all contracts entered into on or after January 20, 2017, or amendments to existing contracts made on or after January 20, 2017, related to services rendered for private detention centers and/or facilities, or by private detention center and/or facility companies.

(3) All records that: (i) Contain any of the following words: "private prison," "immigration-detention," "Conroe," "GEO Group," "GEO Corrections Holdings, inc.," "George Zoley," "Pablo Paez," "Core Civic," "CoreCivic," "David Venturella," "Raney," "Cyrier," "Keough," "MTC," or "Management and Training Corporation"; and (ii) Are sent or received by any of the following Department of Homeland Security employees: Secretary of Homeland Security John Kelly, John Barsa, Brent Bombach, Kevin Carroll, Ben Cassidy, Kevin Chmielewski, Tiffany Cissna, Daniel Cox, Thomas Dinanno, Jon Feere, Mario Flores, Katie Gorka, Gene Hamilton, Harold Hanson, Matt Hayden, Jonathan Hoffman, Roman Jankowski, Elizabeth Johnson, James Johnson, Quinn Jones O'Brien, Julie Kirchnerm Kathy Nuebel Kovarik, Scott Krause, David Lapan, Cora Mandy, Michael McKeown, Alan Metzler, Jayne Neumann, Emily Newman, Kirstjen Nielsen, Lora Ries, Dimple Shah, Tracy Short, Craig Symons, Thomas Szold, Kaitlin Vogt, Erin Waters, Chad Wolf, or Frank Wuco.

Ex. A at 1-2 (footnote omitted).

23.     The record requests were limited to records created in the period from January 20, 2017 to the date DHS conducts a search for responsive records. *Id.* at 2.

24.     Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. § 552(a)(4)(A)(iii), which requires waiver of fees if the disclosure is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Ex. A at 3.

### Plaintiff's Correspondence with DHS FOIA Offices

25.     Plaintiff's request was sent initially to the DHS Privacy Office via electronic mail, which, in a letter dated May 26, 2017, acknowledged receipt and assigned Plaintiff's request the reference number 2017-HQFO-00805.

26.     In that same letter, Defendant notified Plaintiff that parts 1 and 2 of its request had been forwarded to ICE, and also inquired whether "[part] 3 of [Plaintiff's] request . . . would be satisfied at this time if [the DHS Privacy Office] conducted a search of [its] Electronic Correspondence Tracking (ECT) system for records that may be responsive once [the Office] clarif[ied] the search terms that [Plaintiff] included."

27.     On June 1, 2017, Plaintiff responded to request that Defendant search "both emails and the ECT system" for part no. 3 of Plaintiff's request, and that the request be forwarded to appropriate DHS sub-components, if the records responsive to Plaintiff's request were likely to exist elsewhere.

28.     On June 13, 2017, ICE acknowledged that it had received Plaintiff's request on May 26, 2017, assigned the request ICE reference number 2017-ICFO-32206, and claimed a 10-day extension.

29.     DHS also notified Plaintiff by letter dated June 22, 2017 that Plaintiff's request had been forwarded in its entirety to the following DHS components: U.S. Citizens & Immigration Services ("USCIS"), Transportation Security Administration ("TSA"), Federal Emergency Management Agency ("FEMA"), and U.S. Customs & Border Protection ("CBP").

30.     As of the date of this Complaint, Defendant DHS, and numerous DHS components, have failed to notify Plaintiff whether DHS will comply with Plaintiff's FOIA request, *see* 5 U.S.C. § 552(a)(6)(A)(i), or to produce all requested records or demonstrate that they are lawfully exempt from production, *see id.* § 552(a)(6)(C).  Nor have DHS and various of its components notified Plaintiff of the scope of any responsive records DHS intends to produce or withhold and the reasons for any withholdings, or informed Plaintiff that it may appeal any adequately specific, adverse determination.

31.     Because DHS has "fail[ed] to comply with the applicable time limit provisions" of the FOIA, even with the benefit of any extensions of time that DHS might have claimed, Plaintiff is "deemed to have exhausted [its] administrative remedies."  *See id.* § 552(a)(6)(C)(i).

## CLAIM FOR RELIEF

### Count One (Violation of the FOIA, 5 U.S.C. § 552)

32.     Plaintiff repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

33.     By failing to respond to Plaintiff's request within the statutorily prescribed time limit, Defendant has violated its duties under the FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, and to produce all responsive, reasonably segregable, non-exempt information.

34.     Plaintiff is being irreparably harmed by Defendant's violation of the FOIA, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.     order Defendant to conduct searches for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request;

2.     order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiff's FOIA request and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3.     enjoin Defendant from continuing to withhold any and all nonexempt records responsive to Plaintiff's FOIA request;

4.     order Defendant to grant Plaintiff's request for a fee waiver;

5.     grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

6.     grant any other relief this Court deems appropriate.

Dated: February 20, 2018                    Respectfully submitted,

/s/ *Javier M. Guzman*
Javier M. Guzman (D.C. Bar No. 462679)
Adam Grogg (N.Y. Bar)*
Democracy Forward Foundation
1333 H Street NW
Washington, DC 20005
(202) 448-9090
jguzman@democracyforward.org
agrogg@democracyforward.org

*Admitted in New York; practicing under the supervision of members of the D.C. Bar while D.C. Bar application is pending.

*Counsel for Plaintiff*